UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADOLFO CORREA COSS,<br><br>    **Plaintiff,**<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br>    **Defendants.** | Civil Action No.  14-1326 (JEB) |

## MEMORANDUM OPINION

Plaintiff Adolfo Correa Coss was convicted of drug trafficking in 1991.  During his subsequent quest to clear his name, Coss discovered that Guillermo Casas, a confidential informant who kept notebooks detailing his own drug transactions, played an important role in his arrest.  Believing they might exonerate him, Coss submitted a Freedom of Information Act request seeking those notebooks and related material.

After several iterations of Coss's request, the Federal Bureau of Investigation and the Executive Office for United States Attorneys each issued a so-called "Glomar response," refusing to confirm or deny the existence of the documents.  Coss then brought this FOIA suit (confined to the notebooks) contesting these responses, and both he and Defendants now cross-move for summary judgment.  For its part, EOUSA has abandoned its Glomar position and claims that it has since conducted an adequate, albeit fruitless, search for the notebooks.  The FBI, meanwhile, continues to rely on Glomar, while also asserting that Plaintiff has failed to exhaust administrative remedies.  The Court renders a split decision: the EOUSA has complied with FOIA, but the FBI must search its files for the notebooks.

1

I. **Background**

Coss is a former lawful permanent United States resident who claims to have been wrongfully convicted. See Am. Compl., ¶ 4. In 1989, he was arrested for possession of cocaine with intent to deliver. See generally People v. Coss, 617 N.E.2d 138 (Ill. App. Ct. 1993). The search of his home, car, and business "was based on [the allegations of] a confidential . . . police informant" who claimed to have made three separate purchases of cocaine from Coss on May 8, 1989. Id. at 139. At trial and during his subsequent appeal, Coss alleged that the informant – who he even then believed was Casas – had fabricated his story; as a result, Coss maintained, the police officer's search-warrant application contained false statements and was thus invalid. Id. at 140. These arguments did not succeed, and Coss's conviction was affirmed. Id.; Am. Compl., ¶¶ 2, 4; Pl.'s Mot., Exh. D (July 17, 2013, Request) at 1.

Having returned to Mexico, Plaintiff endeavored to reclaim his innocence. To that end, he hired a private investigator, who was able to confirm that the CI in his case was indeed Casas. See Am. Compl., ¶ 5; Pl.'s Mot., Exh. B (Letter from Private Investigator) at 1. Equipped with that information, Plaintiff discovered that one year after his own conviction, Casas was found guilty of conspiracy to possess with intent to distribute cocaine. See United States v. Nava-Salazar, 30 F.3d 788, 792 (7th Cir. 1994). Coss also learned that during Casas's trial the prosecution had admitted into evidence notebooks that Casas used to record his drug transactions. Id. at 795.

On July 17, 2013, believing that the contents of the notebooks would help exculpate him, Plaintiff filed identical FOIA requests with the FBI and the United States Attorney's Office in the Northern District of Illinois, Eastern Division. In the requests he asserted that Casas was the CI in his case, and he sought to "obtain[] a copy of the transactions notebook seized from Casas,

as well as any information that might have been shared . . . with the Chicago Police or Cook County District Attorney's Office in *State v. Correa Coss*, 89-CR-16050, exculpatory or other." July 17, 2013, Request at 2.

In its reply, the USAO instructed Plaintiff to send his request to EOUSA. See Pl.'s Mot., Exh. D (July 31, 2013, USAO Response) at 7. The FBI, on the other hand, issued a Glomar response, claiming that it could neither confirm nor deny the existence of the records because they involved a third party − presumably Casas. See Pl.'s Mot., Exh. D (July 30, 2013, FBI Response) at 3. It explained that Coss could overcome this position by having the third party sign an authorization form, proving the third party's death, or demonstrating that the public interest in disclosure outweighed the third party's privacy interests. Id.

In an effort to direct his correspondence to the appropriate entities, Coss thereafter sent a new request on August 6, 2013, to EOUSA and the FBI, which differed slightly in form. He again alleged that Casas was the CI in his case and this time asked for "a copy of the 'notebook, which contain[s] names, telephone numbers, and records of drug transactions[,]' [that was] identified in Casas' appeal, *U.S. v. Nava-Salazar et. al.* 30 F.3d 788 (7th Cir. 1994)" and "any other information [the agencies] may have relating to Mr. Adolfo Correa Coss (not records check) in this case." Pl.'s Mot., Exh. D (August 6, 2013, Request) at 8-9. Attached to this August 6, 2013, request were a copy of Plaintiff's identification and his own signed release. Id. at 10-11.

Ten days later, Coss sent another letter to both the FBI and EOUSA, apparently responding to the Bureau's July 30 Glomar response. The letter explained that "[a]ll requested records that are responsive may be provided with personally identifying information, other than that pertaining to Adolfo Correa Coss[,] redacted[;] therefore, third party authorization should

not be required." See Pl.'s Mot., Exh. D (August 16, 2013, Letter) at 14. Plaintiff concluded by observing that "[o]ur system of justice must be a fair and equitable one. The public interest in ensuring that no innocent person is convicted of a crime far outweighs any privacy interest in withholding the information." Id. at 15. This was the last communication he had with the FBI prior to the initiation of this suit.

His interaction with EOUSA, conversely, was far more involved. Apparently in response to Plaintiff's August 16 letter, that agency, like the FBI, issued its own Glomar response, also asserting third-party privacy concerns. See Pl.'s Mot., Exh. E (September 16, 2013, EOUSA Response) at 1-2. Coss formally appealed this determination on October 15, 2013, reiterating his previous public-policy statement. See Pl.'s Mot., Exh. F (October 15, 2013, Appeal) at 1. EOUSA responded to this appeal on December 31, 2013. Now abandoning its Glomar position, the agency explained that it had found nine boxes in which the notebooks Plaintiff sought might be located and asked him for the applicable fees to search them. See Def.'s Mot., Declaration of Vinay Jolly, Exh. C (December 31, 2013, EOUSA Response) at 14. Plaintiff, however, never received this December 31 letter. See Pl.'s Mot., Exh. I (May 6, 2014, Request) at 1.

Four months later, on April 30, 2014, Plaintiff did receive a second letter from DOJ, which referenced the December 31, 2013, letter and indicated that because he had not responded within thirty days, EOUSA would consider the matter closed. See Pl.'s Mot., Exh. H (April 30, 2014, DOJ Response) at 1. Plaintiff wrote back on May 6, 2014, clarifying that he had not received the December 31 notice and sending a check for the requested fee amount. See Pl.'s Mot., Exh. I (May 6, 2014, Request) at 1. DOJ thereafter processed Plaintiff's check and

reopened his EOUSA request on May 23, 2014.  See Pl.'s Mot., Exh. J (May 23, 2014, DOJ Response) at 1.

Having not heard back from EOUSA since May 30, 2014, when DOJ sent Plaintiff a letter assigning his request a new FOIA number, Coss filed this suit on July 13, 2014.  His Amended Complaint makes clear that the sole documents he seeks in this action are the notebooks.  See ECF No. 16.  On September 23, 2014, EOUSA sent Plaintiff a letter explaining that "[a] search for records located in the United States Attorney's Office(s) for the Northern District of Illinois has revealed no responsive records regarding the above subject."  Jolly Decl. at 19; Def.'s Mot., Exh. G (September 23, 2013, EOUSA Response) at 19.  Both sides have now cross-moved for summary judgment.

**II.    Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party.  See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007).  In FOIA cases, the agency bears the ultimate burden of proof.  See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136,

142, n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

### III. Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of

Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)). Although FOIA requires an agency to produce all records "reasonably described," a FOIA plaintiff may not expand the scope of his request once his original request is made.

Coss here has limited his request to the notebooks that Casas used to detail his drug transactions. See Am. Compl., ¶¶ 6-7 & Prayer for Relief. In the following analysis, the Court first considers EOUSA's assertion that its unsuccessful search has satisfied FOIA and next assesses the propriety of the FBI's Glomar position.

### A. EOUSA

In seeking summary judgment, EOUSA explains that, although it initially asserted a Glomar response to Plaintiff's request, it has since withdrawn that stance. Instead, the agency maintains that it subsequently conducted a sufficiently thorough search for Casas's notebooks but came up empty. See Def.'s Mot at 6. Plaintiff takes issue with this argument, alleging that Defendant employed incorrect spellings of "Casas" and "Adolfo," thus rendering the search defective. See Pl.'s Opp. at 9. Defendant has the better of this argument.

The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The issue is, ultimately, whether an agency's search was "reasonably calculated to uncover all relevant documents." Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990). To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. Id. The "adequacy of a

FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003); see also Porter v. CIA, 778 F. Supp. 2d 60, 69 (D.D.C. 2011).

Attached to their Motion, Defendants submitted affidavits from Vinay Jolly, Attorney-Advisor, EOUSA, FOIA/PA Unit, and Sharon Getty, liaison in the Civil/Criminal Division of the United States Attorney's Office for the Northern District of Illinois, which detail the scope and method of EOUSA's search. After receiving Plaintiff's narrowed request, Defendants determined that the notebooks, if they existed, would be located in the USAO-N.D. Ill. office, which is where Casas was tried. See Jolly Decl. at 3-4; see generally Nava-Salazar, 30 F.3d 788. EOUSA thereafter searched its Legal Information Office Network System (LIONS) database and the Northern District of Illinois's Case Management (CM) and Electronic Case Files (ECF) databases for "Adolfo Correa Coss, Ricardo Salazar, U.S. v. Ricardo Nova Salazar et al. Chicago Police Department or Cook Country District Attorney's office case 89 CR 16050 re: Adolfo Correa Coss, Correa Coss, Adolfo Coss, Guillermo Casas, and Casas notebook," ultimately locating nine boxes in which Casas's notebooks might be found. See Def.'s Mot., Exh. B (Declaration of Sharon Getty) at 2-3. Upon obtaining payment from Plaintiff, EOUSA searched all nine boxes but did not find the items. Id. at 3. The Court concludes that this constitutes "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

The sole argument Plaintiff can muster in opposition is to complain that the agency searched for documents using incorrect spellings of his and Casas's names. See Pl.'s Opp. at 9. He is wrong. The Getty Declaration shows that Defendant searched for both names with correct

spellings. See Getty Decl. at 2-3. On this point, Plaintiff is likely confusing EOUSA's search with the FBI's, which utilized multiple spellings of "Adolfo" in an effort to cast a wider net. See Def.'s Mot., Exh. 5 (Declaration of David M. Hardy) at 11-12.

Because the Getty and Jolly Declarations establish that EOUSA (1) identified where the relevant notebooks might be stored, (2) searched the nine boxes, and (3) certified that there were no records systems or locations not searched where the notebooks might have been found, see Jolly Decl. at 2-3; Getty Decl. at 2-3, the agency has complied with FOIA. See Perry, 684 F.2d at 127. Summary judgment for EOUSA is thus proper here.

  B. FBI

Although the Bureau stands by its Glomar response, it also interposes an exhaustion defense – to wit, Coss never appealed the FBI's invocation of Glomar and has thus failed to exhaust his administrative remedies. The Court turns to that threshold question first.

  *1. Exhaustion*

There is no dispute that "[a] FOIA requester is generally required to exhaust administrative appeal remedies before seeking judicial redress." CREW v. FEC, 711 F.3d 180, 184 (D.C. Cir. 2013) (citation omitted). The difficulty here is locating an FBI decision from which Coss should have appealed. As set forth in Section I, *supra*, the FBI's July 30, 2013, Glomar response offered Plaintiff several avenues through which he might overcome the Bureau's position: have the third party sign an authorization form, prove the third party's death, or demonstrate that the public interest in disclosure outweighed the third party's privacy interests. Apparently picking door number three, Coss responded with his August 16 letter, stating, "The public interest in ensuring that no innocent person is convicted of a crime far outweighs any privacy interest in withholding the information."

As the FBI never responded thereafter, it seems disingenuous for the Bureau to now adopt a failure-to-appeal position. In other words, Plaintiff followed the instructions of the July 30 letter, and even though his justification was rather scant, the Bureau would still have needed to reject it in order for Coss to know he should then pursue an appeal. Its radio silence left him in FOIA limbo. In such an instance, the law makes clear that exhaustion is not a proper defense: "[I]f an agency fails to make and communicate its 'determination' whether to comply with a FOIA request within certain statutory timelines [20 working days here], the requester 'shall be deemed to have exhausted his administrative remedies.'" CREW, 711 F.3d at 184 (quoting 5 U.S.C. § 552(a)(6)(C)(i)). The Bureau, consequently, may not rely on exhaustion here.

    2. *Glomar*

That preliminary matter cleared away, the Court may now address the viability of the FBI's Glomar position. A quick refresher on that doctrine may prove worthwhile.

When an agency withholds documents, it typically must explain what has been withheld and why. See, e.g., Vaughn v. Rosen, 484 F.2d 820, 825-28 (D.C. Cir. 1973) (requiring "relatively detailed" and "specific" explanations of withholdings). There is, however, an exception to this rule when "confirming or denying the existence of [certain] records would" itself reveal protected information. Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 893 (D.C. Cir. 1995). Such a reply − refusing to confirm or deny the existence of records − is called a Glomar response, named after a Cold-War-era CIA project that the agency wished to keep confidential. See Marino v. Drug Enforcement Admin., 685 F.3d 1076, 1078 n.1 (D.C. Cir. 2012); Phillippi v. Cent. Intelligence Agency, 546 F.2d 1009, 1011 (D.C .Cir. 1976). "A Glomar response is 'an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for

withholding that information.'" Marino, 685 F.3d at 1078 n.1 (quoting Roth v. Dep't of Justice, 642 F.3d 1161, 1178 (D.C. Cir. 2011)).

For a Glomar response to be appropriate, the Government must show that revealing the very existence of records would "cause harm cognizable under a[] FOIA exception." Wolf v. Cent. Intelligence Agency, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation omitted). The exemption at issue here is 7(C), which protects "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

In this case, the FBI contends that the "disclosure of any information would tend to identify a third-party individual, and the FBI discerned no public interest in disclosure of this information and found that privacy interests were paramount." Def. Reply at 3 n.1. Yet this is a mere parroting of the standard without any clear thought about what is actually sought here. All Coss demands in this suit are the notebooks in which Casas detailed his drug transactions. Their existence is not secret; indeed, it is printed for all to see in the pages of the federal reporter. As the Seventh Circuit explained, "From above a trapdoor in Casas' bedroom closet, DEA agents recovered . . . some notebooks . . . . [which] contained records and tabulations of multiple multi-kilogram cocaine transactions." Nava-Salazar, 30 F.3d at 795.

As Coss simply seeks the notebooks that were admitted in Casas's and his co-defendants' trial, this is not a case in which Plaintiff is endeavoring to unmask the identity of an informant or to compromise anyone's security. He has made clear on multiple occasions, furthermore, that all personally identifying material that does not refer to him may be redacted. See, e.g., August 16,

2013, Letter.  Refusing to acknowledge whether or not the notebooks exist borders on foolishness.

As a practical matter, however, Coss might be wise not to get his hopes up.  EOUSA's failure to locate the notebooks in the nine boxes relating to the conspiracy trial could well mean that the FBI has no greater success.  Yet, at the least, it will have to search for them.  Once it has done so and relayed the results to Coss, the parties can inform the Court how they wish to proceed.

One final observation is in order.  The FBI notes that, as a courtesy once the suit was filed, it searched its Central Records System using Coss's name and located no material.  See Hardy Decl., ¶ 24.  This could well be relevant had Plaintiff's request been for FBI records pertaining to himself.  Given that he sought only the Casas notebooks, it is unsurprising that these documents were not uncovered in such a search.  While these efforts by the Bureau deserve commendation, they are no substitute for a targeted search for the actual notebooks.

## IV. Conclusion

For the reasons set forth above, the Court will issue a contemporaneous Order granting each side's Motion in part and denying it in part.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: April 15, 2015