**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ADOLFO CORREA COSS,

    Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

    Defendants.

Civil Action No.  14-1326 (JEB)

<u>**MEMORANDUM OPINION**</u>

    Plaintiff Adolfo Correa Coss is on a quest to find a notebook, which he believes contains detailed records of a confidential informant's drug transactions.  The records, he believes, may help exonerate him from a 1991 conviction for drug trafficking.  After learning that several notebooks were introduced as evidence at the informant's own trial, Coss submitted a Freedom of Information Act request for them.

    A year later, still empty-handed, Coss filed this suit.  The Court, having already granted partial summary judgment for the Department of Justice, <u>see</u> <u>Coss v. U.S. Dep't of Justice</u>, No. 14-1326, 2015 WL 1700847 (D.D.C. Apr. 15, 2015), now addresses the sole remaining issue in the case: whether the Federal Bureau of Investigation has conducted an adequate search for the notebooks.  Satisfied the Bureau has done so, the Court will grant its renewed Motion for Summary Judgment.

**I.**    **Background**

    Coss, a former United States permanent resident, was convicted of possession of cocaine with intent to deliver in 1991.  <u>See</u> Compl., ¶ 4; <u>People v. Coss</u>, 617 N.E.2d 138 (Ill. App. Ct.

1993).  At trial and during his subsequent appeal, Coss maintained that the search-warrant application the police used to search his home, car, and business was based on false claims made by a confidential informant – a man whom he later discovered was Guillermo Casas.  See Coss, 2015 WL 1700847, at *1.  After completing his sentence and returning to Mexico, Coss discovered that Casas, too, had been convicted of drug trafficking.  See generally United States v. Nava-Salazar, 30 F.3d 788 (7th Cir. 1994).  He learned that during Casas's trial, "the prosecution had admitted into evidence notebooks that Casas used to record his drug transactions."  Coss, 2015 WL 1700847, at *1.  Believing that the notebooks would shed light on his own lack of involvement in drug trafficking, Coss then set out to obtain a copy of them by filing FOIA requests with the United States Attorney's Office for the Northern District of Illinois, the FBI, and eventually the Executive Office of United States Attorneys.  Id. at *1-2.

Dissatisfied with the responses he received from the FBI and EOUSA, Coss filed this suit.  His Amended Complaint makes clear that, although he initially requested Casas's "drug transaction notebooks" and "any other information [the agencies] may have relating to Mr. Adolfo Correa Coss," the sole documents he now seeks in this action are the notebooks.  See Pl.'s MSJ, Exh. D (August 6, 2012, Request) at 8-9; Am. Compl., ¶¶ 6-7.  Both parties then cross-moved for summary judgment, though EOUSA and the FBI made different arguments.  Because EOUSA had explained in its affidavit that it "(1) identified where the relevant notebooks might be stored, (2) searched the nine boxes, and (3) certified that there were no records systems or locations not searched where the notebooks might have been found," the Court found the agency's search adequate and granted it summary judgment.  See Coss, 2015 WL 1700847, at *5.

The FBI, on the other hand, raised procedural hurdles in its portion of the motion.  The Court rejected these, and, although skeptical that the Bureau would find the notebooks in its files, nonetheless directed the FBI to search for them.  See id. at *6.

Having conducted that search, the FBI now files a renewed Motion for Summary Judgment.  Attached to its Motion, the agency has submitted an affidavit from David Hardy, Section Chief of the Record/Information Dissemination Section of the FBI's Records Management Division.  See Mot., Attach. 2 (Second Declaration of David M. Hardy), ¶ 1.  This new declaration explains that, if the notebooks were in the FBI's possession, they would be found in the Bureau's Central Record System (CRS), the database containing all information compiled for law-enforcement purposes.  Id., ¶¶ 6-8 & n.1 (citing Def.'s First MSJ, Attach. 5 (Declaration of David M. Hardy), ¶ 21(b)).  The FBI used its Electronic Case File (ECF) system, one of three applications that organize information stored in the CRS, to conduct a full-text search of the system for "Guillermo Casas notebook" and "Casas notebook."  See id., ¶ 7.  Although "[t]his search would have identified any records in the entire CRS universe containing each of the searched terms," it did not return any positive results.  Id.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact is one that would change the outcome of the litigation.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  In the event of conflicting evidence on a material issue, the Court is to

construe the conflicting evidence in the light most favorable to the non-moving party.  See

Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

FOIA cases typically and appropriately are decided on motions for summary judgment.

See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v.

U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007).  In FOIA cases, the agency

bears the ultimate burden of proof to show that it conducted an adequate search.  See Steinberg

v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  "At all times courts must bear in

mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ."  Nat'l Ass'n of

Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502

U.S. 164, 173 (1991)).  The Court may grant summary judgment based solely on information

provided in an agency's affidavits or declarations when they describe "the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey,

656 F.2d 724, 738 (D.C. Cir. 1981).

## III.    Analysis

In moving for summary judgment, the FBI asserts that it conducted an adequate search.

The adequacy of an agency's search for documents under FOIA "is judged by a standard of

reasonableness and depends, not surprisingly, upon the facts of each case."  Weisberg v. Dep't of

Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The issue is, ultimately, whether an agency's

search was "reasonably calculated to uncover all relevant documents."  Truitt v. Dep't of State,

897 F.2d 540, 542 (D.C. Cir. 1990) (internal citation and quotation marks omitted).  To meet its

burden, the agency should submit affidavits or declarations that explain the scope and method of

its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). The

"adequacy of a FOIA search is generally determined not by the fruits of the search, but by the

appropriateness of the methods used to carry out the search." Iturralde v. Comptroller of the

Currency, 315 F.3d 311, 315 (D.C. Cir. 2003).

The Hardy Declaration submitted in support of Defendant's Motion states that the FBI

conducted a full-text search of its entire law-enforcement database for not only the notebooks but

also any records referencing the notebooks. See Second Hardy Decl., ¶ 7. Hardy explained that

"[n]o other record system within the FBI would reasonably contain information about Guillermo

Casas's notebook as it pertains to a criminal investigation." Id., ¶ 8. In support of this assertion,

the Declaration described the organization of the FBI's Central Records System, the types of

files it contains, and the particular search terms used to locate the notebooks. See id., ¶¶ 5-8.

Despite this extensive search, the FBI found neither the notebooks nor "any positive indication

of the FBI's involvement [in] Casas's investigation and prosecution related to this notebook."

Id., ¶ 8. The Court is satisfied that this search is sufficient. In fact, as it noted earlier, the

notebooks were most likely to have been contained in the nine boxes searched by EOUSA. See

Coss, 2015 WL 1700847, at *6.

Plaintiff does not dispute the diligence of the search or the search terms used, but he

rejoins that the FBI was also obligated to find the chain-of-custody record for the notebooks and

contact "the prosecutor and/or records clerk" in Casas's criminal case. See Opp. at 3. Coss

supports his position by citing to Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321 (D.C. Cir.

1999), which held that the Coast Guard, after exhausting ordinary avenues for locating the

subject of a FOIA request, should have contacted the Coast Guard officer known to have

possessed it last. See id. at 328.

This argument, however, overlooks a key difference between <u>Valencia-Lucena</u> and the present litigation.  While the Coast Guard officer actually was a member of the Coast Guard, the agency to which the FOIA request was submitted, prosecutors and court-evidence clerks are not employees of the FBI.  Under FOIA, the Court only has "jurisdiction to enjoin the agency from withholding <u>agency</u> records and to order the production of any <u>agency</u> records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B) (emphasis added); <u>see also</u> <u>Kissinger</u> <u>v. Reporters Comm. for Freedom of the Press</u>, 445 U.S. 136, 150 (1980) (holding that agency did not "improperly withhold" documents that were no longer in its possession).  The Court cannot require the FBI to track down records or people outside its domain.

Of greater significance, Plaintiff himself appears to now realize that the FBI may not have ever been involved in the Casas prosecution.  He has recently filed a new FOIA request with the Drug Enforcement Administration, asking for the transactions notebook.  <u>See</u> Opp., Exh. A (May 26, 2015, FOIA Request).  In affirming Casas's conviction, in fact, the Seventh Circuit recounted in detail the <u>DEA</u> investigation that led to his arrest.  <u>See</u> <u>Nava-Salazar</u>, 30 F.3d at 795 ("From above a trapdoor in Casas' bedroom closet, <u>DEA</u> agents recovered . . . some notebooks . . . contain[ing] records and tabulations of multiple . . . cocaine transactions.") (emphasis added).  The decision's thorough account of the facts never even mentions the FBI. <u>See id.</u> at 792-95.  In badgering the FBI, Coss may be barking up the wrong tree in his search for exoneration-worthy materials.

Finally, Plaintiff seems to argue that the FBI improperly narrowed its search to the notebooks and neglected to comply with his request for other information relating to him.  <u>See</u> Opp. at 1-2.  Yet, any argument regarding the scope of the requested material was foreclosed by

Plaintiff's Amended Complaint, which made clear he was seeking only the notebook.  <u>See</u> Am.

Compl., ¶¶ 6-7; <u>see also</u> <u>Coss</u>, 2015 WL 1700847, at *4.

## IV.     Conclusion

For the reasons set forth above, the Court will issue an Order granting Defendant's

Motion for Summary Judgment.

<u>/s/ James E. Boasberg</u>
JAMES E. BOASBERG
United States District Judge

Date:  <u>September 28, 2015</u>